# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MARK JAMES BROWN, SR.,

                                        Plaintiff,

                                                        9:20-CV-1192
            v.                                          (GLS/ATB)

KORY KEEFER,

                                        Defendant.

---

MARK JAMES BROWN, SR., Plaintiff, pro se
CORY J. SCHOONMAKER, ESQ., for defendant Keefer

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States Senior District Judge.  On September 29, 2020, plaintiff commenced this civil action against, *inter alia*, Jefferson County Sheriff's Deputy Kory Keefer ("Deputy Keefer").  (Complaint ("Compl.")) (Dkt. No. 1).  By Decision and Order dated January 4, 2021, Judge Sharpe dismissed several defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A.  (Dkt. No. 8). The complaint was thereafter dismissed as against defendant Guilfoyle Ambulance Service, Inc. ("Guilfoyle Ambulance"), pursuant to Judge Sharpe's July 13, 2021 order. (Dkt. No. 28).  Accordingly, the only remaining defendant in this action is Deputy Keefer.

Presently before this court is Deputy Keefer's motion for summary judgment

pursuant to Fed. R. Civ. P. 56, seeking dismissal of the complaint as against him. (Dkt. No. 46).  Plaintiff has not filed a response to Deputy Keefer's motion, despite being afforded an extension of time to do so.  (Dkt. No. 48).  For the reasons set forth below, I recommend that the district court grant Deputy Keefer's motion for summary judgment and dismiss the surviving Fourth Amendment excessive force claim and Fourteenth Amendment deliberate medical indifference claim against him.

## I.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1]  The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b).  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

Credibility assessments and the choice between conflicting versions of a story are generally for a jury to resolve. *Rule v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996).  However, the Second Circuit recognized an exception to this rule in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).  In *Jeffreys*, the court held that summary judgment may be granted in the rare case, "where there is nothing in the record to

---

[1]Previously Local Rule 7.1(a)(3).

support the plaintiff's allegations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y. Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 54-55).  In order for the court to apply the *Jeffreys* exception, the defendant must satisfy each of the following: (1) "the plaintiff must rely 'almost exclusively on his own testimony,' "(2) the plaintiff's "testimony must be 'contradictory or incomplete,' " and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Id.* (quoting *Benitez v. Ham*, No. 04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (adopting report and recommendation) (quoting *Jeffreys*, 426 F.3d at 554)).

## II.   Factual Allegations

The relevant facts as stated in plaintiff's complaint have been summarized in several of the court's prior orders.  (Dkt. Nos. 8 at 3-5; 27 at 2-3).  The court will briefly review the facts as necessary to discuss the causes of actions asserted against Deputy Keefer.

On July 5, 2019, plaintiff ran a red light and immediately noticed that a police vehicle had turned on its lights behind him, signaling for plaintiff to stop.  (Compl. at 9).  Plaintiff stopped his vehicle and began to flee on foot.  (*Id.*).  He was eventually apprehended "with [his] hands behind [his] head[,]" and "complied to lay facedown." (*Id.*).  Plaintiff alleges that Deputy Keefer, one of the officers giving chase, proceeded to "aggressively place[ ] his knee on [plaintiff's] back and started to yell 'stop

resisting.'" (*Id.*).  Plaintiff responded, "I'm not resisting." (*Id.*).  Plaintiff further

contends that "when other officers arrived [he] felt several blows to [his] upper body

and head." (*Id.*).  "An officer" then proceeded to "aggressively and with excessive

force" twist plaintiff's arm, while he was face down and with both hands behind his

back." (*Id.*).  Plaintiff "heard three distinct cracks in his arm and was on the point of

unconsciousness[.]" (*Id.*).

Plaintiff was then transported to Jefferson County Jail.  (*Id.* at 10).  There, he

asked Deputy Keefer "why did he break [plaintiff's] arm[?]" (*Id.*).  Deputy Keefer

responded, "because [plaintiff] ran." (*Id.*).  Within one hour of arriving to the Jefferson

County Jail, Guilfoyle Ambulance "arrived and examined [plaintiff's] arm and

determined there were no abnormalities." (*Id.*).  Plaintiff has attached to his complaint

a patient care report describing the extent of treatment provided by the Guilfoyle

Ambulance paramedics, which indicates plaintiff's refusal to be taken to the hospital.

(Dkt. No. 1-1 at 4-6).  In a sworn deposition attached to the complaint, and in a

handwritten note on the Guilfoyle Ambulance report, plaintiff denies that he ever

refused medical treatment.  (*Id.* at 1, 6).  Plaintiff alleges that he stated multiple times

over the course of two hours that his "arm is broke[.]" (Compl. at 9).

## III.    Fourth Amendment Excessive Force

### A.    Legal Standards

The "Fourth Amendment prohibits the use of unreasonable and therefore

excessive force by a police officer in the course of effecting an arrest." *Tracy v.*

*Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386,

395 (1989)). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness,' " *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham*, 490 U.S. at 399). As such, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). In balancing those interests, the Court considers "at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396).

To determine whether a use of force is reasonable, the Court evaluates the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396). Moreover, the Court must "make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' " *Id*. (quoting *Graham*, 490 U.S. at 397). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 397 (internal quotations and citation omitted).

**B.      Analysis**

Plaintiff alleges that he was injured during the course of his arrest on July 5, 2019.  Specifically, plaintiff claims that, subsequent to the foot chase and after complying with the officers' directives to lay "face down," Deputy Keefer "aggressively placed his knee on [plaintiff's] back." (Compl. at 9).  Plaintiff then describes feeling "several blows to [his] upper body and head," and states that his arm was "aggressively" twisted behind his back, causing "three distinct cracks." (*Id.*).  The complaint, however, does not identify which officer or officers delivered the alleged blows to plaintiff's body, nor does it identify who twisted plaintiff's arm behind his back.  In a sworn deposition taken by the Jefferson County Sheriff's Office on or about July 25, 2020, plaintiff recounted the facts leading up to and describing his arrest, but failed to identify what officers were effecting "blows" to his body, or twisted his arm. (Dkt. No. 1-1 at CM/ECF p. 1).

In seeking summary judgment, defendant Deputy Keefer has submitted a sworn affidavit describing his role in plaintiff's arrest on July 5, 2019.  In relevant part, Deputy Keefer confirms that plaintiff was fleeing the police and that he "gave chase on foot." (Affidavit of Deputy Sheriff Kory Keefer ("Keefer Aff.") at ¶¶ 6-9) (Dkt. No. 46-2). During the chase, Deputy Keefer heard an impact that he later learned was plaintiff being struck by a vehicle as he ran across the street. (*Id.* at ¶ 9).  Ultimately, "with the assistance of other officers," Deputy Keefer cornered plaintiff. (*Id.* at ¶ 10). They proceeded to "br[ing] plaintiff to the ground and attempted to effectuate [the] arrest," however plaintiff "squirmed and attempted to avoid being placed in handcuffs."

(*Id.*).  While the officers were attempting to restrain him, plaintiff was lying face down on the ground.  (*Id.*).  Deputy Keefer describes his subsequent, physical contact with the plaintiff as follows:

> I positioned myself above [plaintiff's] head and placed both my hands on his head in a "head control" maneuver that resembled a diamond push-up. As part of this maneuver, the balls of my feet were my only points of contact with the ground, and my hands were my only point of contact with Plaintiff. . . . This maneuver permits an officer to control the movement of the subject's head or neck but does not involve a neck or carotid restraint or any obstruction of the airway. It involves utilizing my body weight to immobilize a suspect's head without causing injury or restraint to his neck. It has the additional benefit of leaving room for other officers to restrain the rest of the suspect's body, if needed.

(*Id.* at ¶¶ 11-12). Deputy Keefer states that he "never made contact, either intentionally or unintentionally, with plaintiff's arms during his arrest," and that other officers restrained plaintiff's arms and placed him in handcuffs.  (*Id.* at ¶ 13).  He further maintains that he "never placed a knee on plaintiff's back," and "never struck plaintiff at any time."  (*Id.* at ¶¶ 14, 15).  Deputy Keefer states that "holding down plaintiff's head was the only physical contact" he made with the plaintiff while restraining him, and such contact was "necessary due to plaintiff's resistance."  (*Id.* at ¶ 15).  According to Deputy Keefer, plaintiff was "resisting so strenuously that he injured one of the arresting officers" by "flail[ing]" his handcuffed wrist, ultimately striking and cutting another officer's arm.  (*Id.* at ¶ 16).

Plaintiff was ultimately restrained and in custody by approximately 5:45 p.m. (*Id.* at ¶ 17).  A different officer, not Deputy Keefer, took custody of plaintiff and placed

him in the back of a police vehicle.  (*Id.* at ¶ 18).  Deputy Keefer did not participate in escorting plaintiff to the police vehicle, nor did he transport plaintiff to the Jefferson County Jail.  (*Id.* at ¶¶ 18, 19).

Based on the foregoing, there is no genuine issue of material fact as to whether Deputy Keefer violated plaintiff's Fourth Amendment right to be free from the use of excessive force.  With respect to plaintiff's arm injury and the "blows" to his body, plaintiff has failed to specifically identify any officer, much less Deputy Keefer, as the individual responsible for causing these alleged injuries during the course of his arrest. The complaint and the exhibits attached thereto merely describe these injuries as having occurred at the hands of an "officer," and the record otherwise lacks an identification in this regard.  In addition, plaintiff has not opposed Deputy Keefer's motion for summary judgment.  Thus, having been presented with Deputy Keefer's undisputed affirmation that he did not make contact with plaintiff's arm, or deliver "blows" to plaintiff's body at the time of plaintiff's arrest, the court concludes that summary judgment is appropriate with respect to these use of force claims.

To the extent plaintiff has alleged that Deputy Keefer "aggressively placed his knee on plaintiff's back," this is also an insufficient basis to maintain plaintiff's excessive force claim.  Deputy Keefer denies having any contact with plaintiff's back throughout the course of plaintiff's arrest - he maintains that his only physical contact with plaintiff throughout the incident was his hands on plaintiff's head.  A supporting deposition prepared by another officer with respect to plaintiff's arrest supports Deputy Keefer's contentions, to the extent it states that Deputy Keefer "kept control of the

[plaintiff's] head area," while other officers were responsible for controlling plaintiff's legs and attempting to pull plaintiff's hands out from under his body.  (Dkt. No. 1-1 at CM/ECF pp. 2-3).  Ordinarily, conflicting accounts such as that of plaintiff and Deputy Keefer might preclude a finding of summary judgment as to whether the defendant's conduct constituted actionable, excessive force.  However, in this case even if Deputy Keefer did place his knee on plaintiff's back, the defendants have established that this act was not only reasonable under the circumstances, but did not produce an injury for which plaintiff is seeking damages.  The court recognizes that the " 'core judicial inquiry' in assessing plaintiff's excessive force claim under the Fourth Amendment is 'not whether a certain quantum of injury was sustained,' but rather whether unreasonable force was applied given the circumstances[.]" *Barcomb v. Kraeger*, No. 3:14-CV-1159, 2016 WL 2644885, at *4 (D. Conn. May 5, 2016) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted)).  However, in this case plaintiff has not alleged that he sustained any injury to his back, or as a result of Deputy Keefer allegedly placing his knee on him.  *See Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, 830 F. App'x 46, 49 (2d Cir. 2020) (considering the plaintiff's lack of pain or injury, or complaints of discomfort, in concluding that use of force was objectively reasonable and granting summary judgment); *Forbes v. City of Rochester*, No. 6:18-CV-06700, 2020 WL 1963139, at *4 (W.D.N.Y. Apr. 6, 2020) (recognizing that in order to establish a Fourth Amendment violation, "a plaintiff must allege that he sustained an injury.").

Moreover, the undisputed circumstances surrounding plaintiff's arrest as

10

described by Deputy Keefer suggest that, had Deputy Keefer briefly placed his knee on plaintiff's back, it would have been objectively reasonable for him to do so.  By the time Deputy Keefer made physical contact with plaintiff, plaintiff had already evaded arrest once and was in the process of actively fleeing from the police in a foot chase, before finally being cornered.  (Keefer Aff. ¶¶ 6-10).  Plaintiff had to be brought to the ground, where he continued to actively resist arrest.  (Keefer Aff. ¶¶ 10, 15-16; Dkt. No. 1-1 at CM/ECF p. 3).  Plaintiff's conduct proved to be a risk to the arresting officers, as illustrated by the fact that one officer sustained a cut on his arm from being struck by the partially attached handcuff plaintiff was flailing around in resistance to being arrested.  (Keefer Aff. ¶16; Dkt. No. 1-1 at CM/ECF p. 3).  Accordingly, Deputy Keefer's purported act of "aggressively" putting his knee on plaintiff's back did not amount to a constitutional violation, where no injury was sustained and his conduct was objectively reasonable under the circumstances.  *See Mongeau v. Jacksonville Sheriff's Office*, 197 Fed. App'x 847, 851 (11th Cir. 2006) (finding that an officer's placement of his knee on an arrestee's back to subdue him was objectively reasonable given the arrestee's previous resistance and risk of flight); *see also Style v. Mackey*, No. 20-2165, 2021 WL 5022657, at *1 (2d Cir. Oct. 29, 2021).

## IV.   <u>Deliberate Indifference to Medical Needs</u>

### A.   **Legal Standard**

Plaintiff's medical care claim is governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d. Cir. 2017) (citation

11

omitted).  The Supreme Court has distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable.  *See Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2470-71 (2015).

In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement.  *See Darnell*, 849 F.3d at 35.  District courts in this circuit have since applied the *Kingsley* standard to claims of deliberate indifference to serious medical needs brought under the Fourteenth Amendment.  See *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety' ").  The court agrees that the *Kinglsley/Darnell* standard should be applied to an arrestee alleging deliberate indifference to a serious medical need.  *See Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018).

In order to state a claim based on constitutionally inadequate medical treatment, a plaintiff must satisfy a two-prong test. *Darnell,* 849 F.3d at 29. The first element is objective and "considers whether the alleged deprivation of adequate medical care [was] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006))(quotation marks omitted).[2] The second, 'mental' element[3] ensures that the defendant acted with at least deliberate indifference to the challenged conditions. *See Darnell*, 849 F.3d at 29; see also *Bell v. Carson*, No. 9:18-CV-783 (MAD/ATB), 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

### 1.     Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is

---

[2]Although the Supreme Court, in *Kingsley*, altered the standard for deliberate indifference claims, the objective prong remains the same whether analyzed under the Eighth or Fourteenth Amendments. *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

[3]In *Darnell*, the Second Circuit cautioned that this element, commonly referred to as the "subjective prong," was better classified as a "*mens rea* prong" or "mental element prong." The Court reasoned that the term "subjective prong" might be a misleading description because "the Supreme Court has instructed that "deliberate indifference roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell,* 849 F.3d at 29 (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37 (1994). After the Second Circuit concluded that deliberate indifference should be defined objectively for a claim of a due process violation, other courts in this circuit have adopted the phrase "mental element prong" to more appropriately describe the relevant standard. *See Durham,* 2019 WL 1103284, at *4; *Richardson v. Corr. Medical Care, Inc.,* No. 9:17-CV-0420 (MAD/TWD), 2018 WL 1580316, at *5-6 (N.D.N.Y. Mar. 28, 2018).

sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2.    Mental Element

Under the second prong of the deliberate indifference analysis, the court must

consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "As a consequence, the relevant *mens rea* is recklessness, which, for present purposes, 'more closely resembles recklessness as the term is used in the civil context' and 'does not require a defendant to be subjectively aware of the harm resulting from his acts or omissions.'" *Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *10 (E.D.N.Y. Feb. 22, 2019) (citing *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)) (citations omitted). Under this standard, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the [plaintiff] would occur." *Feliciano*, 2017 WL 1189747, at *13 (citing *Darnell*, 849 F.3d at 35).

    **B.    Analysis**

    Plaintiff's surviving claim against Deputy Keefer  for deliberate indifference to his medical care is limited to the alleged three-hour delay in medical treatment between the time plaintiff was arrested and when he received medical treatment at the Jefferson County Jail.  (Dkt. No. 8 at 10-13).  Plaintiff alleges that when the "officers" who were involved in his arrest took him to the ground and applied handcuffs, an unidentified officer twisted plaintiff's arm behind his back, at which point plaintiff heard three distinct cracks in his arm.  (Compl. at 9).  Plaintiff further alleges that "over the next

two hours," he "stated multiple times" that he broke his arm. (*Id.* at 9-10). Plaintiff maintains that he was finally transported to Jefferson County Jail, where he received medical treatment within an hour from Guilfoyle Ambulance. (*Id.*). Plaintiff alleges that although the paramedics determined there were no abnormalities with respect to his arm, subsequent x-ray imaging revealed that plaintiff suffered a fractured elbow. (Compl. at 10; Dkt. No. 1-1 at CM/ECF p. 7).

Defendant Deputy Keefer disputes plaintiff's characterization of the events as they occurred immediately after plaintiff's arrest. Specifically, Deputy Keefer maintains that no more than forty-five minutes elapsed between plaintiff's arrest and the medical examination performed by Guilfoyle Ambulance. It is undisputed that plaintiff was arrested and in the custody of the Jefferson County Sheriffs at or about 5:45 p.m. on July 5, 2019. (Compl. at 9; Keefer Aff. ¶ 17). According to Guilfoyle Ambulance's records, as produced by plaintiff with his complaint, and Deputy Keefer's sworn affidavit, Deputy Keefer called the paramedics on behalf of plaintiff by 6:26 p.m. (Dkt. No. 1-1 at CM/ECF p. 4; Keefer Aff. ¶ 20). Thus, plaintiff's allegation of a three-hour delay between his arrest and his medical treatment is patently unsupported, and plaintiff has not disputed the defendants contention that, in fact, the time elapsed between injury and the request for treatment on his behalf was no more than forty-five minutes.

Moreover, the defendants have established that the forty-five minute period in which plaintiff alleges he was in pain does not represent a deliberate delay in medical treatment on the part of Deputy Keefer. In his sworn affidavit, Deputy Keefer states

16

that after plaintiff was arrested, a different officer drove plaintiff to the Jefferson County Jail, and Deputy Keefer drove there separately. (Keefer Aff. at ¶ 18). Plaintiff was already in a holding cell when Deputy Keefer next encountered him after the arrest. (*Id.* at ¶ 19). As Deputy Keefer avers, he finally spoke to plaintiff at the Jefferson County Jail at approximately 6:25 p.m., and although plaintiff denied medical assistance, Deputy Keefer nevertheless perceived that plaintiff was in pain and called Guilfoyle Ambulance immediately. (*Id.* at ¶¶ 20-21). Thus, based on the defendant's representations, virtually no time elapsed between the moment Deputy Keefer had reason to know that medical attention was necessary, and when he did in fact procure medical treatment for plaintiff.

Although plaintiff alleges, generally, that he complained for two hours after his arrest that his arm was broken, he makes no specific allegation of specifically informing Deputy Keefer that he required medical treatment at the scene of the arrest, or anytime prior to 6:25 p.m. Furthermore, plaintiff has failed to produce any evidence in opposition to the defendant's motion for summary judgment sufficient to raise a genuine question of material fact as to this issue.[4] Accordingly, Deputy Keefer's delay,

---

[4]As noted above, patient care report described the extent of treatment provided by the Guilfoyle Ambulance paramedics and indicated that plaintiff refused to be taken to the hospital. Plaintiff's unsupported allegations of neglect of his complaints of injury do not create a material dispute of fact given the contradictory documentary evidence. *See, e.g., Brown v. White*, No. 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention to plaintiff is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record) (citing inter alia, *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[M]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"), overruled on other grounds, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

if any, in seeking medical treatment on behalf of plaintiff was so temporary that it did not amount to deliberate indifference. *See Pateman v. City of White Plains*, 17-CV-6156, 2020 WL 1497054, at *21 (S.D.N.Y. Mar. 25, 2020) (collecting cases).

## V.    Qualified Immunity

### A.    Legal Standards

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In evaluating whether a right was clearly established at the time a civil rights defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc. v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir. 1990).

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendants'] conduct violated a constitutional

right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223, 224 (2009) (holding that, "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory in all cases"). The court may also examine "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. However, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

**B.    Analysis**

Defendant Deputy Keefer alternatively argues that he should be awarded summary judgment because he is entitled to qualified immunity.  As previously set forth, the court is recommending that plaintiff's claims against Deputy Keefer do not rise to violations of constitutional proportions.  In the absence of any constitutional violations by the defendant, the court need not proceed any further with the qualified immunity analysis, and dismissal of the complaint is appropriate.  *See Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022) ("A defendant official's motion for dismissal on this ground as a matter of law should be granted if either the facts do not support a finding that the plaintiff's federal rights were violated, or the plaintiff's right not to be subjected to the defendant's challenged conduct was, at that time of that conduct, not clearly established.");  *Sanchez v. Chapman*, No. 3:19-CV-1314, 2022 WL 657621, at *4 (D. Conn. Mar. 4, 2022) ("If a court determines that one prong establishes that a defendant is entitled to qualified immunity, then 'it need not reach the other' prong.")

(quoting *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)).

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that defendant Kory Keefer's motion for summary

judgment (Dkt. No. 46) be **GRANTED** and the complaint **DISMISSED IN ITS**

**ENTIRETY**, and it is further

**ORDERED** that copies of this Report-Recommendation and Order be served on

the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 13, 2023

Andrew T. Baxter
U.S. Magistrate Judge

20